**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PLAYBOY ENTERPRISES INTERNATIONAL, INC., a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. |
| PLAY BEVERAGES, LLC, a Delaware limited liability company; CIRTRAN BEVERAGE CORPORATION, a Utah corporation; and CIRTRAN CORPORATION, a Nevada corporation, | ) | Judge: |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff Playboy Enterprises International, Inc. ("Playboy" or "Plaintiff") alleges the

following against Defendants Play Beverages, LLC, CirTran Beverage Corporation, and CirTran

Corporation (collectively, "Defendants"):

**INTRODUCTION**

1.     Playboy is one of the most recognized and popular consumer brands in the world.

Playboy is a media and lifestyle company that markets its highly distinctive, widely recognized

and famous brand through a wide range of media properties and licensing initiatives. The

company publishes Playboy magazine in the United States and abroad and creates content for

distribution via television networks, websites, mobile platforms and radio. Through licensing

agreements, the Playboy brand appears on a wide range of consumer products in more than 150

countries as well as retail stores and entertainment venues.

2.      This is an action for trademark infringement and other related claims arising from Defendants' unauthorized use of Playboy's world famous registered trademarks: PLAYBOY and the Rabbit Head Design ("the Playboy Marks").

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), which confer original jurisdiction upon this Court for civil actions arising under the laws of the United States and any act of Congress relating to trademarks, respectively.

4.      Defendants are subject to the personal jurisdiction of this Court because, among other things, Defendants have purposefully availed themselves of the benefits of doing business in the State of Illinois, by advertising and promoting goods to the residents of Illinois and by causing injury to Playboy within Illinois.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2) and (c)(2) because Defendants are subject to personal jurisdiction in this district and therefore are residents of this district, and because a substantial part of the events giving rise to Playboy's claims took place in this district.

## THE PARTIES

6.      Playboy Enterprises International, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Beverly Hills, California.  Playboy Enterprises International, Inc. is a wholly-owned subsidiary of Playboy Enterprises, Inc., which is also a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Beverly Hills, California.

7.     Upon information and belief, Defendant Play Beverages, LLC ("PlayBev") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in West Valley City, Utah.

8.     Upon information and belief, Defendant CirTran Beverage Corporation ("CBC") is a corporation organized and existing under the laws of the State of Utah, with its principal place of business in West Valley City, Utah.

9.     Upon information and belief, Defendant CirTran Corporation ("CirTran") is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in West Valley City, Utah.  The domain name www.playbev.com is registered to CirTran.

10.     Upon information and belief, CBC is a subsidiary or division of CirTran, and PlayBev is a subsidiary, division, affiliate, or other related company of CBC.

11.     Upon information and belief, at all relevant times, Defendants were acting as agents of each other.

12.     Until recently, PlayBev was in bankruptcy proceedings in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court").  (See Order Dismissing Case, attached hereto as Exhibit A).

13.     Upon information and belief, CBC was formed by CirTran for the purpose of manufacturing, marketing, and distributing PlayBev's Playboy-licensed products.  Upon information and belief, CBC manufactures, markets, distributes, and sells PlayBev's Playboy-licensed products in the United States pursuant to an agreement between PlayBev and CBC.

## FACTUAL BACKGROUND

### The Playboy Brand

14.     Playboy is a brand-driven, international multi-media entertainment company. Since 1954, Playboy has been a leader in the development and distribution of lifestyle entertainment for adult audiences, and is perhaps best known as the publisher of Playboy magazine, one of the world's best-selling men's magazines.

15.     Through Playboy's extensive marketing efforts, media projects, and product licensing initiatives, Playboy has become one of the world's most well-recognized brands and has built substantial consumer good will associated with the Playboy Marks.  Playboy's brand recognition and the hundreds of federally registered trademarks that it owns are its most valuable assets.

### The Infringed Trademarks

16.     Playboy owns over 250 federally registered trademarks.  These include registrations for the Playboy Marks in several categories, including Class 32, the category covering energy drinks, as follows.

| MARK | FILING DATE | DATE OF FIRST USE IN COMMERCE | REGISTRATION NUMBER |
| --- | --- | --- | --- |
| PLAYBOY | 11/14/2006 | 4/1/2008 | 3,496,428 |
| Rabbit Head Design | 11/14/2006 | 4/1/2008 | 3,496,429 |

17.     The Class 32 registrations for the Playboy Marks are attached hereto as Exhibit B.

18.     Each year, Playboy spends millions of dollars advertising, promoting, developing, and protecting its trademarks, including the Playboy Marks, which are central to Playboy's success and the success of its United States and worldwide licensees.

19.     Playboy uses or licenses others to use the Playboy Marks to promote the Playboy brand and to market, advertise, and sell consumer goods and services.  Playboy's robust licensing program includes licensing in the category of beverages in general and energy drinks specifically.

**The Parties' Now-Expired License Agreement**

20.     PlayBev is a former licensee of Playboy.  In 2006, PlayBev and Playboy entered into a license agreement, under which PlayBev had the limited right to manufacture and sell certain non-alcoholic beverages, including Playboy-branded energy drinks (the "License Agreement").

21.     On April 26, 2011, a petition was filed by several creditors of PlayBev commencing a Chapter 7 bankruptcy proceeding against PlayBev as an involuntary debtor in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court").  Shortly thereafter, PlayBev obtained an order converting the proceeding to a voluntary bankruptcy under Chapter 11.

22.     By its terms, the License Agreement was due to expire on March 31, 2012.  As the time approached for the expiration of the License Agreement, in light of negotiations then occurring in the bankruptcy proceeding, Playboy and PlayBev entered into a written agreement to extend the expiration date of the License Agreement to July 31, 2012.  PlayBev sought and obtained an order from the Bankruptcy Court approving the parties' agreement to extend the

expiration date of the License Agreement. (See Motion to Approve Extension Agreement and Order Approving Extension Agreement, attached hereto as Exhibits C and D, respectively).

23.      In July of 2012, Playboy and PlayBev entered into a second extension agreement, which was also approved by the Bankruptcy Court (the "Second Extension Agreement"). (See Ex Parte Motion to Approve Second Extension Agreement and Order Approving Second Extension Agreement, attached hereto as Exhibits E and F, respectively).

24.      The Second Extension Agreement set forth three alternative expiration dates for the License Agreement, depending on the circumstances. First, it specified that the License Agreement would expire on September 30, 2012. Second, it provided an alternative expiration date for the License Agreement if PlayBev obtained an order confirming its Chapter 11 plan of reorganization by September 30, 2012. Third, it provided that it would "terminate automatically and without further action by either party or the Bankruptcy Court" if PlayBev's proposed reorganized debtor did not make a mandatory $2 million payment into escrow for the benefit of Playboy within a specified time-frame.

25.      All expiration dates in the Second Extension Agreement have passed: (i) PlayBev's proposed reorganized debtor did not make the mandatory $2 million escrow payment; (ii) PlayBev cancelled its confirmation hearing and therefore did not obtain confirmation of its Chapter 11 plan of reorganization; and (iii) the expiration date of September 30, 2012 also has passed.

26.      On or about August 8, 2012, Playboy and PlayBev signed a new license agreement. The new license agreement was subject to conditions precedent before it could take effect, specifically confirmation of a Chapter 11 plan of reorganization, and an upfront fee of $2

million paid into escrow. PlayBev defaulted on those conditions, however, and the new

agreement never took effect.

27.     Specifically, PlayBev failed to pay the $2 million upfront fee into escrow by the

deadline that had been set by the parties in the Second Extension Agreement and the new license

agreement. Playboy repeatedly advised PlayBev to cure this funding default. PlayBev did not do

so. Playboy has also repeatedly told PlayBev that the old License Agreement has expired.

**Defendants' Infringing Activities**

28.     PlayBev's license agreement with Playboy has expired.  PlayBev is not currently

authorized to use the Playboy Marks.

29.     CirTran and CBC, who had derived all rights from PlayBev with respect to the

use of the Playboy Marks, likewise have no right to use the Playboy Marks.  CirTran, however,

continues to act as though PlayBev's license agreement is still in force.  (See CirTran

Corporation Form 10-Q, dated November 30, 2012, available at http://www.cirtran.com/ (under

"Investor Relations," "S.E.C. Filings")).

30.     Defendants use and, upon information and belief, will continue to use the Playboy

Marks in their advertisement, promotion, distribution, and sales of Playboy Energy Drink.

31.     Playboy Energy Drink is advertised, marketed, and promoted in Illinois and is

sold in the United States.

32.     Defendants advertise and promote Playboy Energy Drink through their websites

www.playbev.com, and www.cirtran.com (which are accessible in Illinois), and otherwise.

33.     Defendants own, operate and/or use the domain names www.playbev.com and

www.cirtran.com.

34.     The Playboy Marks are prominently displayed on the above-named websites and on Playboy Energy Drink itself, which continues to be advertised, promoted, and distributed.

35.     Defendants state on www.playbev.com that PlayBev is an official licensee of Playboy and that PlayBev's use of the word "Playboy" and the Rabbit Head Design is under license.  However, these statements are not true, as the License Agreement has expired and Playboy has advised Defendants of this fact.

**Harm to Playboy**

36.      Defendants' infringing conduct is depriving Playboy of the absolute right to control the quality of the Playboy Marks.  Playboy has spent many years building up enormous goodwill and value associated with the Playboy Marks, which Defendants are now jeopardizing. Playboy cannot control this goodwill while Defendants continue infringing upon the Playboy Marks.

37.     In addition, Defendants' infringement is damaging Playboy's reputation as a company.  Defendants' blatantly infringing conduct conveys to the public and to the marketplace that Playboy's intellectual property can be taken advantage of and that its valuable brand can be used in an manner that is detriment to its business interests.  This damage to Playboy's reputation will not only affect the Playboy Marks in this specific category, but will affect the brand as a whole, across all licensing categories.

38.     Finally, Defendants' infringement is irreparably harming the energy drink category itself.  Defendants' actions are tarnishing the category because they continue to represent their use of the Playboy Marks as authorized by Playboy, when that is not the case.  As long as Defendants' infringement causes confusion, Playboy is hindered in its ability to control the use of its intellectual property in, and to capitalize on, this licensing category.

## COUNT I

Trademark Infringement (Against all Defendants)

(15 U.S.C. § 1114)

39.     Playboy specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

40.     Defendants' conduct constitutes trademark infringement of Playboy's registered marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

41.     Defendants are using the Playboy Marks in interstate commerce in connection with their advertisement, promotion, distribution, and sale of Playboy Energy Drink.

41.     Without authorization or consent of Playboy, Defendants have used, and continue to use, the Playboy Marks in connection with Defendants' advertisement, promotion, distribution, and sale of Playboy Energy Drink.

42.     Defendants' unauthorized use of the Playboy Marks is likely to cause confusion or to cause mistake or to deceive as to origin, approval, connection, sponsorship, or affiliation, to the detriment of Playboy and its customers.

43.     Defendants' conduct has caused, and unless restrained by the Court, will continue to cause irreparable injury to Playboy.

44.     Upon information and belief, Defendants' aforementioned infringing conduct has been willful, wanton, and malicious, and done with the intent to deceive.  Playboy is therefore entitled to an award of its reasonable attorneys' fees and costs.

45.     Playboy has no adequate remedy at law, and is further entitled to a preliminary and permanent injunction against Defendants' infringing conduct.

## COUNT II

False Advertising (Against all Defendants)

(15 U.S.C. § 1125(a))

46.     Playboy specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

47.     Defendants' advertising on their websites that PlayBev is an official licensee of Playboy and that PlayBev's use of the Playboy Marks is under license is literally false or likely to mislead customers.

48.     Upon information and belief, Defendants' false advertising is likely to influence purchasing decisions of customers.

49.     As the owner of the Playboy Marks, Playboy was and is injured by Defendants' misrepresentations.

50.     Defendants' conduct has caused, and unless restrained by the Court, will continue to cause irreparable injury to Playboy.

51.     Upon information and belief, Defendants' aforementioned false advertising has been willful, wanton, and malicious, and done with the intent to deceive. Playboy is therefore entitled to an award of its reasonable attorneys' fees and costs.

52.     Playboy has no adequate remedy at law, and is further entitled to a preliminary and permanent injunction against Defendants' false advertising.

## COUNT III

Anti-Cybersquatting Consumer Protection Act (Against Defendant Play Beverages, LLC)

(15 U.S.C. § 1125(d))

53.     Playboy specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

54.     PlayBev operates and/or uses the domain name www.playboyenergy.com. PlayBev no longer has the right to use or operate this domain name because PlayBev's license agreement with Playboy has expired and Playboy has advised PlayBev of this fact.

55.     Playboyenergy.com is identical and/or confusingly similar to Playboy's distinctive trademark, "Playboy," and PlayBev's use and/or operation of the website falsely and confusingly suggests that PlayBev is affiliated with Playboy.

56.     Upon information and belief, PlayBev uses and/or operates this domain name in bad faith and with intent to profit from using the Playboy Marks.

57.     PlayBev has no intellectual property rights or any other rights in the Playboy Marks.

58.     PlayBev's use and/or trafficking in the domain name www.playboyenergy.com constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Playboy to relief.

59.     PlayBev's conduct has caused, and unless restrained by the Court, will continue to cause irreparable injury to Playboy.

60.     Upon information and belief, PlayBev's aforementioned infringing conduct has been willful, wanton, and malicious, and done with the intent to deceive.  Playboy is therefore entitled to an award of its reasonable attorneys' fees and costs.

61.     Playboy has no adequate remedy at law, and is further entitled to a preliminary and permanent injunction against PlayBev's infringing conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Playboy respectfully requests that this Court:

1.     Issue a preliminary and permanent injunction prohibiting Defendants, their affiliates, subsidiaries, parents, and their respective officers, agents, servants, attorneys, and

employees, and all persons in active concert or participation with them, and mandating that Defendants forever cease and desist and refrain in the future from, anywhere in the world:

      a.      Using, in whole or in part, the PLAYBOY designation or Rabbit Head Design (the "Playboy Marks") or any confusingly similar designations;

      b.      Manufacturing, advertising, promoting, distributing, making, purchasing, offering for sale or selling any goods or services, including Playboy Energy Drink, containing the Playboy Marks or any confusingly similar designations;

      c.      Doing any act or thing that is likely to cause the consuming public to believe that Defendants' goods or services are authorized by Playboy or in some way connected with Playboy and/or Playboy's business, or that is likely to injure or damage Playboy or the Playboy Marks;

      d.      In any way infringing or damaging the Playboy Marks; and

      e.      Attempting, causing, or assisting any of the above-described acts, including but not limited to enabling others to conduct the scheme described above, or by passing along information to others to allow them to manufacture, advertise, promote, distribute, make, purchase, offer for sale or sell any goods or services containing the Playboy Marks or any confusingly similar designations;

      f.      Otherwise competing unfairly with Playboy in any manner.

2.      Enter judgment in favor of Playboy on the counts asserted herein;

3.      Declare this to be an exceptional case pursuant to 15 U.S.C. § 1117;

4.      Award Playboy the costs incurred in bringing this action, including attorneys' fees;

5.      Order that PlayBev be prohibited from using or operating the domain name

www.playboyenergy.com; and

6.      Award Playboy such further relief as this Court deems just, proper, and equitable.

Dated:  February 1, 2013                Respectfully submitted,

                                        /s/ M. David Weisman
                                        KATTEN MUCHIN ROSENMAN LLP
                                        525 West Monroe Street
                                        Chicago, IL  60661
                                        Telephone:  (312) 902-5200
                                        Facsimile:  (312) 902-1061
                                        M. David Weisman
                                        david.weisman@kattenlaw.com
                                        Mpoli Simwanza-Johnson
                                        msjohnson@kattenlaw.com

                                        – and –

                                        VENABLE LLP
                                        2049 Century Park East, Suite 2100
                                        Los Angeles, CA 90067
                                        Telephone:  (310) 229-9900
                                        Facsimile: (310) 229-9901
                                        Richard J. Frey (Pro Hac Vice Application Forthcoming)
                                        RJFrey@venable.com
                                        Tamany Vinson Bentz (Pro Hac Vice App. Forthcoming)
                                        TJBentz@venable.com
                                        Melissa C. McLaughlin (Pro Hac Vice App. Forthcoming)
                                        MCMcLaughlin@venable.com


                                        *Attorneys for Plaintiff*
                                        Playboy Enterprises International, Inc.