**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PLAYBOY ENTERPRISES INTERNATIONAL, INC., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| | ) Case No.  13 CV 00826 |
| PLAY BEVERAGES, LLC, a Delaware limited liability company; CIRTRAN BEVERAGE CORPORATION, a Utah corporation; and CIRTRAN CORPORATION, a Nevada corporation, | ) ) Judge Robert W. Gettleman ) ) ) ) |
| Defendants. | ) ) |

**PLAYBOY'S MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION</u>**

### I. <u>INTRODUCTION</u>

Playboy Enterprises International, Inc. ("Playboy") is a highly recognizable and popular entertainment and lifestyle company.  The name "Playboy" and the iconic Rabbit Head Design have been used by Playboy for decades as the company has invested significant resources to build its brand and expand its licensing initiatives, including securing the two federally registered trademarks for PLAYBOY and the Rabbit Head Design at issue in this lawsuit (the "Playboy Marks").  The Playboy brand has over 50 years of global brand recognition, providing instant credibility and recognition for its licensees.

Defendants CirTran Corporation ("CirTran") and its subsidiaries and affiliates Play Beverages, LLC ("PlayBev") and CirTran Beverage Corporation   ("CBC") (collectively, "Defendants") are infringing the Playboy Marks through their unauthorized use of the marks in advertising, marketing, promoting, distributing, and selling Playboy Energy Drink.

PlayBev is a former licensee of Playboy whose license agreement has expired.  PlayBev

also sought and obtained a court order from the United States Bankruptcy Court for the District of Utah (while PlayBev was a debtor in possession subject to the jurisdiction of that court) approving a Playboy/PlayBev stipulation that specified an expiration date for the license agreement. That expiration date passed several months ago. Playboy has repeatedly advised Defendants of the expiration of the license agreement.

Nonetheless, Defendants continue using the Playboy Marks in connection with Playboy Energy Drink, even affirmatively asserting months after the expiration that they will keep manufacturing, marketing, and selling Playboy Energy Drink using the Playboy Marks. Defendants' infringing conduct will create confusion among consumers and within the trade and will hinder Playboy's ability to control the quality of its trademarks, its goodwill on the Playboy Marks, and its reputation, causing irreparable harm.

Playboy seeks preliminary injunctive relief to protect its world-famous brand from further irreparable harm and infringement and to protect the public from ongoing confusion, pending a trial on the merits.

II. **STATEMENT OF FACTS**

### A. Playboy and the Playboy Brand

Playboy is one of the most recognized and popular consumer brands in the world. (Declaration of Christine Coffelt [hereinafter "Coffelt Decl."] ¶ 2). Playboy is a media and lifestyle company that markets the brand through a wide range of media properties and licensing initiatives. (*Id.*). The company publishes *Playboy* magazine in the United States and abroad and creates content for distribution via television networks, websites, mobile platforms and radio. (*Id.*). Through licensing agreements, the Playboy brand appears on a wide range of consumer products in more than 150 countries as well as retail stores and entertainment venues. (*Id.*).

Through Playboy's extensive marketing efforts, media projects, and product licensing initiatives, Playboy built substantial consumer good will associated with the Playboy Marks. (*Id.* ¶ 6). Playboy's brand recognition and the hundreds of trademarks that it owns are its most valuable assets. (*Id.* ¶ 8).

**B. The Infringed Trademarks**

Playboy owns over 250 federally registered trademarks. These include registrations for the Playboy Marks in several categories, including Class 32, the category covering energy drinks, as follows. (*Id.* ¶ 3, Ex. A).

| MARK | FILING DATE | DATE OF FIRST USE IN COMMERCE | REGISTRATION NUMBER |
| --- | --- | --- | --- |
| PLAYBOY | 11/14/2006 | 4/1/2008 | 3,496,428 |
| Rabbit Head Design | 11/14/2006 | 4/1/2008 | 3,496,429 |

The Playboy Marks (as used in Class 32) have been in continuous use since 2008, and the designation PLAYBOY and the Rabbit Head Design have been in continuous use by Playboy with respect to other categories of goods and services for decades. (*Id.* ¶ 4).

Each year, Playboy spends millions of dollars advertising, promoting, developing, and protecting its trademarks, including the Playboy Marks, which are central to Playboy's success and the success of its United States and worldwide licensees. (*Id.* ¶ 5).

Playboy uses or licenses others to use the Playboy Marks to promote the Playboy brand and to market, advertise, and sell consumer goods and services. Playboy's robust licensing program includes licensing in the category of beverages in general and energy drinks specifically. (*Id.* ¶ 7).

### C. **Playbev, CBC, and CirTran**

PlayBev is a former licensee of Playboy.  (*Id.* ¶ 9).  In 2006, PlayBev and Playboy entered into a license agreement, under which PlayBev had the limited right to manufacture and sell certain non-alcoholic beverages, including Playboy-branded energy drinks (the "License Agreement").  (*Id.*).  CBC was formed by CirTran, its parent company, for the purpose of manufacturing and distributing Playboy Energy Drink for PlayBev.  (Declaration of Melissa C. McLaughlin [hereinafter "McLaughlin Decl."] ¶¶ 2-3, Exs. A-B).

On April 26, 2011, a petition was filed by several PlayBev creditors commencing a Chapter 7 bankruptcy proceeding against PlayBev as an involuntary debtor in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court").  (Request for Judicial Notice [hereinafter "RJN"], Ex. A).  Shortly thereafter, PlayBev obtained an order converting the proceeding to a voluntary bankruptcy under Chapter 11.  (*Id.*, Ex. B).

By its terms, the License Agreement was due to expire on March 31, 2012.  As the time approached for the expiration of the License Agreement, in light of negotiations then occurring in the bankruptcy proceeding, Playboy and PlayBev entered into a written agreement to extend the expiration date of the License Agreement to July 31, 2012.  (*Id.*, Ex. C).  PlayBev sought and obtained an order from the Bankruptcy Court approving the parties' agreement to extend the expiration date of the License Agreement.  (*Id.*, Ex. D).

In July of 2012, Playboy and PlayBev entered into a second extension agreement, which was also approved by the Bankruptcy Court (the "Second Extension Agreement").  (*Id.*, Exs. E & F).  The Second Extension Agreement set forth three alternative expiration dates for the License Agreement, depending on the circumstances.  (*Id.*, Ex. E).  First, it specified that the License Agreement would expire on September 30, 2012.  (*Id.*, Ex. E).  Second, it provided an

alternative expiration date for the License Agreement if PlayBev obtained an order confirming its Chapter 11 plan of reorganization by September 30, 2012. (*Id.*, Ex. E). Third, it provided that it would "terminate automatically and without further action by either party or the Bankruptcy Court" if PlayBev's proposed reorganized debtor did not make a mandatory $2 million payment into escrow for the benefit of Playboy within a specified time-frame. (*Id.*, Ex. E).

All expiration dates in the Second Extension Agreement have passed: (i) PlayBev's proposed reorganized debtor did not make the mandatory $2 million escrow payment; (ii) PlayBev cancelled its confirmation hearing and therefore did not obtain confirmation of its Chapter 11 plan of reorganization; and (iii) the hard deadline of September 30, 2012 also has passed. (*See* Coffelt Decl. ¶ 10; RJN, Ex. G).

Both extension agreements specified that they were in furtherance of the parties' negotiations for a settlement of claims and a new license agreement. (Coffelt Decl. ¶11). The new license agreement was subject to certain conditions precedent before it could take effect: confirmation of a Chapter 11 plan of reorganization, and an upfront fee of $2 million paid into escrow. (*Id.* ¶ 11 & Ex. B). The new agreement never took effect because PlayBev defaulted on the conditions. Thus, neither the original Agreement nor the new license agreement is operative. (*Id.* ¶ 12). Playboy advised PlayBev repeatedly that the Agreement had expired. (*Id.* ¶¶ 13, 14).

The Bankruptcy Court set a final hearing to determine whether it would keep PlayBev's case in a Chapter 11, convert it to a Chapter 7, or dismiss the case. PlayBev ultimately stipulated to dismissal. (RJN, Ex. H).

The Bankruptcy Court dismissed PlayBev's case on December 7, 2012. (RJN, Ex. I). Playboy acted quickly to enforce its rights, filing a complaint and a motion for preliminary

injunction in the Central District of California on December 11, 2012. On January 30, 2013, the California Court dismissed Playboy's action without prejudice, finding that venue did not exist in that District, but that venue would be proper in Illinois. (*Id.*, Ex. J). The California Court did not reach the merits of Playboy's then-pending motion for preliminary injunction. (*Id.*, Ex. J). Accordingly, Playboy has immediately re-filed the action and motion for preliminary injunction in this Court.

### D. **Defendants' Continued Use of the Playboy Marks**

PlayBev is not currently authorized to use the Playboy Marks since all possible expiration dates set forth in any agreements have passed. (Coffelt Decl. ¶ 13). CirTran and CBC, who had derived all rights from PlayBev with respect to the use of the Playboy Marks, likewise have no right to use the Playboy Marks. (*See id.*).

Defendants, however, continue to use the Playboy Marks in their advertisement, promotion, distribution, and sales of Playboy Energy Drink. Defendants advertise and promote Playboy Energy Drink through their websites www.playbev.com/usa, and www.cirtran.com. (McLaughlin Decl. ¶¶ 5-7, Exs. D-F). The Playboy Marks are also prominently displayed on the above-named websites and on Playboy Energy Drink itself, which continues to be advertised, promoted, and distributed. (McLaughlin Decl. ¶¶ 6-7, Exs. E-F; Coffelt Decl. ¶ 15).

Moreover, Defendants unequivocally tout and capitalize upon the value of the Playboy brand and the Playboy Marks in connection with Playboy Energy Drink, despite the fact that they have no authorization to do so. PlayBev states in current promotional materials that:

- "Playboy has over 54 years of global brand recognition;"

- "Playboy is one of the most recognized brands in the world;"

- "Playboy is a lifestyle brand that appeals to men and women;" and

- "Playboy Energy Drink is an aspirational brand that will increase sales and drive profitability." (McLaughlin Decl. ¶ 8, Ex. G).

CirTran also states, quoting PlayBev, that:

- "[t]he Playboy Rabbit Head Icon is among the most recognized brand icons globally, and affords us instant recognition and credibility in this dynamic category – all of which will ultimately translate to trial and repeat purchases;" and

- "Playboy Energy Drink was created to give consumers a taste of the lifestyle that has always been associated with the Playboy brand." (*Id.* ¶ 9, Ex. H).

In its public filings, CirTran has reported sales attributed to CBC's manufacturing, marketing, and distribution of Playboy Energy Drink as follows:

- $2,943,921 (beverage distribution sales in 2011);

- $7,712,492 (beverage distribution sales in 2010);

- $772,816 (revenue for sales of Playboy Energy Drink in North America in 2011);

- $2,061,893 (revenue for sales of Playboy Energy Drink in North America in 2010);

- $1,482,780 (beverage distribution sales to external customers in the nine months ending September 30, 2012).

(*Id.* ¶¶ 3-4, Exs. B & C). And just one day before Playboy filed this Motion, Defendants restated their intent to continue selling Playboy Energy Drink. (*Id.* ¶ 11, Ex. J).

Finally, Defendants state on www.playbev.com that PlayBev is an official licensee of Playboy and that PlayBev's use of the word "Playboy" and the Rabbit Head Design is under license. (*Id.* ¶ 10, Ex. I). However, these statements are not true, as the License Agreement has expired and Playboy has advised Defendants of this fact.

Since the License Agreement has expired, Playboy's ability to further develop and use this category of goods (i.e., non-alcoholic beverages, including energy drinks) is hampered by Defendants' unauthorized use of the category. (Coffelt Decl. ¶ 16).

## III.    STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

Under these circumstances where the defendant is a holdover licensee, preliminary injunctions are customarily granted to protect valuable brands from the ongoing irreparable injury that naturally results from the harmful activities. *See Smith v. Dental Products Co.*, 140 F.2d 140, 148-50 (7th Cir. 1944) (plaintiff entitled to injunction where defendant continuing to use trademarks following expiration of license); 4 McCarthy on Trademarks and Unfair Competition § 25:31 (4th ed.) ("The licensor's case for a preliminary injunction against a holdover dealer or franchisee is stronger than in the ordinary trademark infringement case and irreparable harm always flows from unlawful use and confusion.") (internal quotations and citations omitted); *cf.* Rest. (3d) Unfair Competition § 35, cmt. h (1995) ("Absent special circumstances, courts will ordinarily grant a preliminary injunction in a trademark infringement action if there is strong evidence of a likelihood of confusion.").

"A party seeking a preliminary injunction is required to demonstrate a likelihood of success on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm if the relief is not granted. If the moving party can satisfy these conditions, the court must then consider any irreparable harm an injunction would cause the nonmoving party. Finally, the court must consider any consequences to the public from denying or granting the injunction. Sitting as a court of equity, the court then weighs all these factors employing a sliding-scale approach." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002) (internal citations omitted).

IV.    **ARGUMENT**

    **A.  Playboy Is Likely To Succeed On the Merits of its Claim**

    To prevail on its Lanham Act trademark claim Playboy must establish that the Playboy Marks are valid and that Defendants' use of the Playboy Marks is likely to cause confusion among customers. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Both elements are satisfied here.  And where, as here, the matter is at the preliminary injunction stage, the threshold is low and Playboy need only "show a greater than negligible chance of prevailing on the merits of the underlying infringement claim." *Id.*

    **1.    The Playboy Marks are Valid and Protectable Marks**

    The Playboy Marks are valid and protectable marks.  The marks are valid as evidenced by Playboy's trademark registrations.  (*See* Coffelt Decl. ¶ 3, Ex. A).  Under federal law, trademark registrations "shall be prima facie evidence of the validity of the registered mark . . . and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods and services specified in the registration . . . ."  15 U.S.C. § 1115(a).  It is undisputed that Playboy owns federal trademark registrations for the Playboy Marks, which constitute *prima facie* evidence of Playboy's rights.  Playboy has spent millions of dollars advertising, promoting, developing, and protecting the Playboy Marks, which are crucial to Playboy's success and the success of its United States and worldwide licensees.  (Coffelt Decl. ¶ 5).  Defendants' clearly state on their website www.playbev.com/usa that the Playboy Marks are owned by Playboy.  (McLaughlin Decl. ¶ 10, Ex. I).

    The Playboy Marks are protectable because they are inherently distinctive.  The designation PLAYBOY and the Rabbit Head Design are arbitrary marks that do not suggest or describe any ingredient, quality, or characteristic of the goods with which they are used –

namely, energy drinks. *See* 2 McCarthy on Trademarks and Unfair Competition § 11:11 (4th ed.) ("Arbitrary marks comprise those words, symbols, pictures, etc., that are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services."). Rather, the Playboy Marks identify the source of a product. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753, 2757 (1992) (Suggestive, arbitrary and fanciful marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection.").

### 2. Defendants' Unauthorized Use Of the Playboy Marks Is Likely To Cause Confusion

Defendants' use of the Playboy Marks confuses consumers and leads them to believe there is still an affiliation between Playboy and Defendants when there no longer is any such affiliation or authorization. Indeed, Defendants explicitly represent on [www.playbev.com](www.playbev.com) that PlayBev is "an official licensee of Playboy Enterprises International, Inc." (McLaughlin Decl. ¶ 10, Ex. I).

Where, as here, a former licensee continues to use the licensor's trademark without authorization, this continued use establishes trademark infringement and a likelihood of confusion as a matter of law. *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989) ("If the owner of the trademark has broken off business relations with a licensee he cannot ensure the continued quality of the (ex-)licensee's operation, whose continued use of the trademark is therefore a violation of trademark law."); *Smith v. Dental Products Co.*, 140 F.2d 140, 148-50 (7th Cir. 1944) (defendant liable for trademark infringement by continuing to use trademarks following expiration of license agreement and plaintiff entitled to injunction); *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 922 (C.D. Ill. 2000) ("The

likelihood of confusion exists as a matter of law if a licensee continues to use marks owned by the licensor after termination of the license.").

Defendants' continued use of the Playboy Marks after the expiration of the License Agreement establishes a likelihood of confusion. When consumers see the word "Playboy" and the Rabbit Head Design on Playboy Energy Drink, they will automatically think that the product comes from Playboy itself or is sponsored by or affiliated with Playboy. Furthermore, consumers who visit PlayBev's website will believe PlayBev's misleading statement that it is an official licensee of Playboy.

Because Defendants' use of the Playboy Marks as a holdover licensee establishes infringement as a matter of law, it is not necessary to evaluate the likelihood of confusion factors. Even so, those factors also point to a likelihood of confusion in this case. For example:

- The Playboy Marks are strong and famous because of their inherent distinctiveness. *See, e.g., Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 882-83 (N.D. Ill. 1999) (an "extremely famous" and strong mark weighs heavily in favor of likelihood of confusion where the marks are identical).

- Defendants are using Playboy's exact trademarks. *See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1087-88 (7th Cir. 1988) (use of nearly identical mark weighed in favor of likelihood of confusion).

- Defendants' use of the Playboy Marks is intentional and aims to capitalize on Playboy's goodwill. *See Planet Hollywood (Region IV), Inc.*, 80 F. Supp. 2d at 884.

- Playboy intends to further develop and use this category of goods (i.e., non-alcoholic beverages, including energy drinks), but its ability to do so is hampered by Defendants unauthorized use of the category. *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 680-

81 (7th Cir. 2001) (trademark owners should be protected against the use of similar marks in markets in which the owner might reasonably be expected to expand).

- And Playboy Energy Drink is an inexpensive good such that consumers are likely to exercise only minimal care when purchasing it.  *Id.* at 683 (explaining that consumers "will exercise a lesser degree of care and discrimination in their purchases" of inexpensive products).  *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002) ("In assessing the likelihood of consumer confusion, we consider: … (4) the degree of care likely to be exercised by consumers, ….").

At bottom, where, as here, a former licensee continues to use an exact copy of a trademark, a likelihood of confusion is present and an injunction is proper.  *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989) *Smith v. Dental Products Co.*, 140 F.2d 140, 148-50 (7th Cir. 1944); *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 922 (C.D. Ill. 2000).

### B.     Playboy will Suffer Irreparable Harm From Defendants' use of the Playboy Marks and has no Adequate Remedy at Law

A trademark holder's "inability to control the nature and quality of the defendants' goods" jeopardizes the trademark holder's reputation, which is "[t]he most corrosive and irreparable harm attributable to trademark infringement."  *Re/Max N. Central, Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001).  Indeed, the Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy."  *Id.*

Harm to reputation and goodwill and the loss of control over the mark are particularly compelling where the infringer is a former licensee.  *See Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989) (lack of quality control over former licensee

conflicts with trademark owner's duty to control the mark); *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 920 (C.D. Ill. 2000) (noting that the continued trademark infringement by the former licensee injures the trademark holder such that it is entitled to injunctive relief).

Here, Defendants continue to use the Playboy Marks even though they know they have no authority to do so. Defendants' infringing conduct is depriving Playboy of the absolute right to control the quality of the Playboy Marks. Playboy has spent many years building up enormous goodwill and value associated with the Playboy Marks, which Defendants are now jeopardizing. Playboy cannot control this goodwill while Defendants continue infringing upon the Playboy Marks.

In addition, Defendants' infringement is damaging Playboy's reputation as a company. Defendants' blatantly infringing conduct conveys to the public and to the marketplace that Playboy's intellectual property can be taken advantage of and that its valuable brand can be used in an manner that is detrimental to its business interests. This damage to Playboy's reputation will not only affect the Playboy Marks in this specific category, but will affect the brand as a whole, across all licensing categories.

Finally, Defendants' infringement is irreparably harming the energy drink category itself. Defendants' actions are tarnishing the category because they continue to represent their use of the Playboy Marks as authorized by Playboy, when that is not the case. As long as Defendants' infringement causes confusion, Playboy is hindered in its ability to control the use of its intellectual property in, and to capitalize on, this licensing category.

An injunction is the only adequate remedy to prevent continued irreparable injury to Playboy.

**C.     The Balance Of Hardships Weighs Strongly In Favor of Playboy**

Playboy has and will continue to invest substantial time and resources in the development of its brand and reputation, including its trademarks.  The substantial and irreparable harm that Playboy will continue to suffer due to Defendants' infringement outweighs any harm that Defendants may suffer if they are prevented from continuing their infringement.

Defendants' use of the exact Playboy Marks is intentional, even though Defendants know the License Agreement has expired.  When infringement is intentional, the balance of hardships weighs in favor of the plaintiff even if the defendant has invested significant resources in its business.  *Helene Curtis Indus., Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1333 (7th Cir. 1977) (defendant's arguments that "it will be severely injured if the preliminary injunction is upheld since it has invested a great deal of money in advertising and . . . inventory . . . merit little equitable consideration in light of [defendant's] willful use of an infringing trademark").

The injunction sought by Playboy will not prevent Defendants from selling an energy drink or any other product – it will just prevent Defendants from unfairly using the Playboy Marks to do so.  *See Re/Max North Central, Inc. v. Cook*, 272 F.3d 424, 432-33 (7th Cir. 2001) (defendant's argument that an injunction would put her out of business was without merit, as defendant could maintain her business and was only prevented from using plaintiff's trademarks).

**D.     Defendants' Use of the Marks Should be Enjoined to Protect the Public**

It is in the public interest to prevent the confusion and deception resulting from Defendants' infringing use of the Playboy Marks.   In trademark infringement actions, an injunction serves the public interest by preventing consumer confusion.  *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) ("the public interest is served by the

injunction because enforcement of the trademark laws prevents consumer confusion"); *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813-14 (7th Cir. 2002).  When a defendant loses its authorization to use a mark but continues to use it anyway, "the potential for consumer confusion is even greater than in cases of random infringement" and such "unauthorized use confuses and defrauds the public."  *Paisa, Inc.*, 928 F. Supp. at 1013 (citation omitted) (describing the "strong public interest in preventing consumer confusion and fraud" when a former franchisee is infringing because the franchisee "becomes associated in the public's mind with the trademark holder").

## V.    __CONCLUSION__

Despite their knowledge of the expiration of PlayBev's License Agreement, Defendants continue to infringe the Playboy Marks by using them to advertise, market, promote, distribute, and sell Playboy Energy Drink.  Defendants blatantly display the Playboy Marks and capitalize on Playboy's valuable brand.  This egregious, intentional conduct is irreparably injuring Playboy's control over its goodwill and the quality of the Playboy Marks, as well as Playboy's reputation and its business interests in the energy drink category itself, and it must be stopped.

For the foregoing reasons, Playboy respectfully requests that this Court grants its Motion for Preliminary Injunction.

Dated:  February 1, 2013                    Respectfully submitted,

/s/ M. David Weisman
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL  60661
Telephone:  (312) 902-5200
Facsimile:  (312) 902-1061
M. David Weisman
david.weisman@kattenlaw.com
Mpoli Simwanza-Johnson
msjohnson@kattenlaw.com

– and –

VENABLE LLP
2049 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 229-9900
Facsimile: (310) 229-9901
Richard J. Frey (Pro Hac Vice Application Forthcoming)
RJFrey@venable.com
Tamany Vinson Bentz (Pro Hac Vice App. Forthcoming)
TJBentz@venable.com
Melissa C. McLaughlin (Pro Hac Vice App. Forthcoming)
MCMcLaughlin@venable.com

*Attorneys for Plaintiff*

Playboy Enterprises International, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2013, I electronically filed the foregoing ***Playboy's Memorandum of Law in Support of Motion for Preliminary Injunction*** with the Clerk of the Court using the CM/ECF system, and caused a copy of the same to be served by Federal Express to:

> Play Beverages, LLC
> c/o Corporation Service Company, Agent
> 2711 Centerville Road Suite 400
> Wilmington, DE 19808
>
> Cirtran Corporation:
> c/o InCorp Services, Inc., Agent
> 2360 Corporate Circle, Suite 400
> Henderson, NV 89074
>
> Cirtran Beverage Corporation
> c/o Iehab Hawatmeh, Agent
> 4125 S. 6000 W.
> West Valley City, UT 84128

By: /s/ M. David Weisman
     One of the Plaintiff's Attorneys