IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PLAYBOY ENTERPRISES INTERNATIONAL, )
INC., a Delaware corporation, )
)
             Plaintiff, )      No.  13 C 0826
      v. )
)       Judge Robert W. Gettleman
PLAY BEVERAGES, LLC, a Delaware limited )
liability company; CIRTRAN BEVERAGE )
CORPORATION, a Utah corporation; and )
CIRTRAN CORPORATION, a Nevada )
corporation, )
)
             Defendants. )

## <u>MEMORANDUM OPINION AND ORDER</u>

On February 1, 2013, Playboy Enterprises International, Inc. ("plaintiff") filed a motion for preliminary injunction to enjoin Play Beverages, LLC ("Play Bev"), CirTran Beverage Corporation ("CBC"), and CirTran Corporation ("CirTran") (collectively, "defendants") from using plaintiff's trademarks on defendants' products.  Defendants opposed the entry of a preliminary injunction, and on March 5, 2013, moved to dismiss or stay this action pending the resolution of a parallel case in state court.  For the reasons described below, the court grants defendants' motion to stay the instant case and denies the motion for a preliminary injunction without prejudice.

## <u>BACKGROUND</u>

The instant dispute arises from a license agreement between the parties regarding the use of two of plaintiff's trademarks: the "Playboy" name and the Rabbit Head Design.  In 2006, plaintiff and Play Bev entered into a product license agreement ("license agreement") that granted Play Bev the right to distribute certain non-alcoholic drinks, including an energy drink

labeled "Playboy Energy Drink," in certain territories. Play Bev subsequently entered into a manufacturing and distribution agreement with CBC, a subsidiary of CirTran, that granted CBC certain manufacturing and distribution rights regarding Playboy Energy Drink. CBC in turn recruited various sub-distributors in different countries, including Redi FZE, an entity based in the United Kingdom.

The parties characterize the terms of the license agreement slightly differently. Plaintiff states that the license agreement had an initial five and a half year term with three five-year renewal options that required explicit approval by plaintiff. Defendants state that the license agreement had a twenty year term, with an initial five year term and additional renewal terms. The parties agree that under the terms of the license agreement, Play Bev was required to pay plaintiff a guaranteed royalty and meet a certain amount of "minimum net sales" each year the license was in effect. During the initial five year term, Play Bev did not meet the minimum net sales amount, but plaintiff expressly waived this default.

Plaintiff contends that the license agreement has expired and that defendants continue to use the Playboy marks illegally, creating confusion among consumers and causing irreparable harm. Defendants allege that, even if the agreement has expired, plaintiff is obligated to renew the license and the continuing use of the mark does not constitute infringement.

According to defendants, in March 2011, plaintiff expressly indicated that it intended to renew the license agreement with two amendments: plaintiff would accept the quarterly payments of guaranteed royalties; and the net sales target would be waived as long as Play Bev developed its territory and distribution network. Plaintiff then allegedly reversed its position on April 1, 2011, when it demanded the full $2 million guaranteed royalty owed under contract.

2

Defendants allege that plaintiff intended to terminate the license agreement in order to work with an alternative licensee: Redi FZE. Plaintiff allegedly was in formal negotiations with Redi FZE by May 2011, while Redi FZE was under contract with CBC and subject to a non-circumvention provision. Defendants also allege that plaintiff disrupted defendants' business operations and distribution network by communicating with distributors and sub-licensees, contributing to defendants' default on certain contract requirements.

The instant case is not the first time these parties have met in court in connection with the license agreement. On April 26, 2011, prior to the expiration of the initial term of the agreement, several Play Bev creditors filed a petition commencing an involuntary Chapter 7 bankruptcy proceeding against Play Bev, which Play Bev converted to a voluntary bankruptcy under Chapter 11. On June 7, 2011, plaintiff notified defendants that the license agreement had expired due to defendants' failure to pay the royalties. Play Bev advised plaintiff of the bankruptcy proceeding and indicated that the termination notice was void due to the bankruptcy. On August 29, 2011, Play Bev initiated an adversary proceeding against plaintiff and others in the bankruptcy court, alleging that plaintiff had breached its contractual obligations and tortiously interfered with Play Bev's distribution network. Plaintiff filed a counterclaim. The parties subsequently negotiated a standstill agreement wherein Play Bev agreed to dismiss the adversary proceeding without prejudice in order for the parties to negotiate a business resolution. No resolution was reached in these negotiations.

Under the license agreement, the initial five-year term was to expire on March 30, 2012. During the course of the bankruptcy proceedings, the parties entered into two extension agreements in furtherance of the parties' negotiations for a settlement of claims and a new

license agreement. The parties first agreed to extend the original license agreement until July 31, 2012. In July 2012, the parties entered into a second extension agreement, which provided three alternative expiration dates for the original license agreement. The extension agreement stated that the license agreement would expire on September 30, 2012, and provided that the license agreement would end on an alternative date if Play Bev obtained an order confirming its Chapter 11 plan of reorganization by September 30, 2012. Alternatively, the extension agreement provided that it would "terminate automatically and without further action by either party or the Bankruptcy Court" if Play Bev's proposed reorganized debtor did not make a $2 million payment into escrow for the benefit of Playboy in a specified time-frame.

In August 2012, a new license agreement was executed. Play Bev, however, failed to the make the $2 million payment required to make the agreement effective.

On October 15, 2012, plaintiff provided notice to defendants that it considered the license agreement to be expired and asserted that Play Bev had no continuing license rights. In response, on October 25, 2012, Play Bev and CBC filed a lawsuit in Illinois state court against Playboy and others, re-alleging the claims from the adversary proceeding. That case is currently proceeding before Judge Pantle in the Circuit Court of Cook County.

The bankruptcy court in Utah dismissed Play Bev's case on December 7, 2012. On December 11, 2012, plaintiff filed a complaint and motion for a preliminary injunction in federal court in the Central District of California. On January 30, 2013, the federal court dismissed plaintiff's action without prejudice, finding that venue was more proper in Illinois. On February 1, 2013, plaintiff filed the instant action and sought a preliminary injunction. On March 5, 2013, defendants filed a motion to stay the instant suit under the abstention doctrine

4

announced in <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, 96

S.Ct. 1236 (1976), or alternatively, under the first-to-file rule.

## **DISCUSSION**

The court first analyzes defendants' motion to stay the instant case pending the resolution

of the state court case. "Federal courts have a 'virtually unflagging obligation' to exercise the

jurisdiction conferred on them by Congress." <u>AAR International, Inc. v. Nimelias Enterprises</u>

<u>S.A.</u>, 250 F.3d 510, 517 (7th Cir. 2001), quoting <u>Colorado River</u>, 424 U.S. at 817. Nonetheless,

animated by concerns about "wise judicial administration" and "conservation of judicial

resources," in <u>Colorado River</u> the Supreme Court held that under "limited" and "exceptional"

circumstances, a federal district court may stay or dismiss[1] an action when there is an ongoing

parallel action in state court. <u>Id</u>. at 818; <u>LaDuke v. Burlington Northern Railroad Company</u>, 879

F.2d 1556, 1558 (7th Cir. 1989).

As the Seventh Circuit noted in <u>Lumen Construction, Inc. v. Brant Construction Co. Inc</u>.,

780 F.2d 691, 694 (7th Cir. 1985), "a federal court cannot lightly abjure its responsibility to

assert jurisdiction." Thus, "if there is any substantial doubt that the parallel litigation will be an

adequate vehicle for the complete and prompt resolution of the issues between the parties, it

would be a serious abuse of discretion for the district court to stay or dismiss a case in deference

to the parallel litigation." <u>AAR International</u>, 250 F.3d at 518. (Internal citations omitted.)

---

[1]The Seventh Circuit has held that a stay, instead of a dismissal, is the appropriate
procedure because a stay keeps the federal forum available if the state court action does not
result in a final judgment. <u>J & A Sales and Marketing, Inc. v. J.R. Wood, Inc.</u>, 2002 WL 653897,
at *2 (N.D. Ill. April 19, 2002), citing <u>Rosser v. Chrysler Corp.</u>, 864 F.2d 1299, 1308 (7th Cir.
1988).

To determine whether Colorado River abstention is appropriate, a court must first address whether the state and federal actions are parallel. Id. If the actions are parallel, the court then considers the factors articulated in Colorado River and its progeny to determine whether exceptional circumstances exist warranting abstention. Id.

Suits are parallel if "substantially the same parties are litigating substantially the same issues simultaneously in two fora." Id. (quoting Schneider Nat'l Carriers, Inc. v. Carr, 903 F.2d 1154, 1156 (7th Cir. 1990). A court asks not whether the suits are "formally symmetrical" or identical, but rather whether there is "a substantial likelihood that the foreign litigation 'will dispose of all claims presented in the federal case.'" Id., quoting Day v. Union Mines, Inc., 862 F.2d 652, 656 (7th Cir. 1988). The mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel. Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc., 962 F.2d 698, 701 (7th Cir. 1992); Lumen, 780 F.2d at 695.

In support of their motion, defendants argue that the instant case is simply the "mirror image" of the state court suit, and that the suits are parallel. Plaintiff argues that the actions are not parallel because the state suit deals with conduct during the term of the contract, and the federal suit deals with post-contractual conduct.[2] The court disagrees. Although plaintiff focuses on alleged post-contractual infringement, defendants' defense in the federal action involves the conduct that occurred during the term of the contract. Drawing a temporal line is an artificial barrier; the court must consider the conduct of the parties that is relevant to the determination of merits of the case, regardless of when it occurred.

---

[2]Defendants dispute plaintiff's characterization of the contractual agreement as expired.

6

Here, the parties and issues are substantially the same in both the state court case and the instant action. At the heart of both cases is the status of the license agreement. The determination of whether defendants are entitled to continue to use the marks is crucial to the outcome of both actions.[3] Should this court determine that defendants have the right to continue to use the mark, plaintiff's request for a preliminary injunction will be denied. The state court will have to consider the same arguments in order to rule on defendants' claims in the state court action, and a determination in favor of defendants would essentially resolve the predicate factual and legal questions in plaintiff's trademark, false advertising, and cybersquatting claims in this court. Likewise, should this court find that the license has expired, defendants will no longer have the right to make use of the marks, and plaintiff's request for preliminary injunction may be granted. The state court could also evaluate the same arguments and determine that defendants are not entitled to use the mark.[4] Such a ruling would potentially resolve many predicate questions necessary to the resolution of all of plaintiff's claims in the instant case.

---

[3]Although plaintiff argues that the suits are not parallel, plaintiff also claims that Judge Pantle's ruling, described below, precludes defendants from asserting that the license agreement is still in effect. If the state court's ruling can dispose of the federal claims, this is further evidence that the suits are substantially similar and therefore parallel.

[4]On March 15, 2013, Judge Pantle ruled on a motion to dismiss filed by Playboy, the state court defendant and plaintiff in this case. Judge Pantle dismissed four counts of the sixteen-count complaint without prejudice for failure to adequately plead the elements of the state law causes of action. Judge Pantle denied Playboy's motion to dismiss defendants' state law claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), tortious interference (Count III), civil conspiracy (Count IV), promissory estoppel (Count V) and Injunctive Relief (Count VI). In this ruling, Judge Pantle found that the plaintiff (Play Bev) did not provide the notice required under the contract to renew the original license, and as a result, defendants' claims were not barred by the standstill agreement. The judge did not rule on defendants' (state court plaintiffs') substantive claims. This court will therefore not interpret Judge Pantle's order as disposing of any substantive claims in the instant suit.

Because of the substantial overlap in the relevant facts, arguments, and claims in these actions, there exists the potential for inconsistent rulings. If this court were to consider and grant the motion for preliminary injunction at this juncture, such a ruling could contradict and interfere with the state court's prerogative to decide the issues pending before it.  Additionally, "since a judgment by either court would ordinarily be res judicata in the other, the existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first- a race . . . prejudicial. . . to the possibility of reasoned decisionmaking by either forum."  Arizona v. San Carlos Apache Tribe of Arizona, 463 U.S. 545, 567-68, 103 S. Ct. 3201, 3214, 77 L. Ed. 2D 837 (1983).  Because both actions seek injunctive relief, there is the possibility that competing injunctions could issue from both courts, a grave "consequence[] for the appearance and actuality of justice." Lumen, 780 F.2d at 694 n. 2. The central question in this dispute is currently being considered by both courts, and "there would be a grand waste of efforts by both the courts and parties in litigating the same issues regarding the same contract in two forums at once."  Microsoftware Computer Systems, Inc. v. Ontel Corp., 686 F.2d 531, 538 (7th Cir. 1982), overruled on other grounds by GulfStream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296.  These two actions are an instance of the parties litigating the same issues in both fora and are parallel.   Having determined that the state and federal actions are substantially similar, the court must analyze the following factors to determine whether "exceptional circumstances" exist to justify deference to the state court under Colorado River: (1) whether the state court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by

the concurrent fora; (5) the source of governing law; (6) the adequacy of state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. <u>Lumen</u>, 780 F.2d at 694-95. No single factor is determinative. <u>See</u> <u>Colorado River</u>, 424 U.S. at 818.

"The decision to abstain is based on an assessment of the totality of the circumstances." <u>Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc</u>., 180 F.3d 896, 900 (7th Cir. 1999). Thus, the district court's decision whether to abstain should not rest on a "mechanical checklist" of the relevant factors, and the weight given to any particular factor will vary greatly from case to case, depending on the particular factual setting. <u>LaDuke</u>, 879 F.2d at 1559, citing <u>Moses H. Cone Memorial Hosp. v. Mercury Construction Corp</u>., 460 U.S. 1, 16, 103 S.Ct. 927, 942 (1983).

Several of the factors listed above weigh heavily in favor of abstention. The state court obtained jurisdiction first when defendants filed the state court case in October 2012, approximately three months prior to the filing of the instant action. The state court has also invested significant time in familiarizing itself with the facts of this dispute and has advanced greater discovery and ruled on substantive motions. The relative progress of the suit in state court favors a stay in the federal action.

Additionally, because the issues in both cases are intertwined and there exists the potential for inconsistent rulings, the desirability of avoiding piecemeal litigation is strong. "'Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.'" <u>Day</u>, 862 F.2d at 659 (quoting <u>American Int'l Underwriters, (Philippines), Inc. v. Continental Ins. Co.</u>, 843 F.2d 1253, 1258 (9th

Cir. 1988)). Here, a state court decision could obviate the need for a ruling from this court, as described above.  Moreover, there is a definite possibility of inconsistent results if the courts were to arrive at differing conclusions regarding the defendants' use of the marks.  The potential for duplication and inconsistency counsel in favor of abstention.

It should be noted as well that plaintiff did not attempt to remove the state court case to federal court until such a motion was untimely.  While staying the federal case may preclude plaintiff from pursuing its claims in a federal forum, plaintiff had the opportunity to remove the state court action and did not do so.  The availability of removal therefore does not weigh against abstention.  The failure to pursue removal, however, does factor into whether the federal claim is vexatious or contrived.  Although defendants allege that plaintiff is forum shopping by filing the federal action, the court notes only that plaintiff's motives for filing the case in this court instead of removing the state case are questionable.  The tenth factor therefore does not weigh heavily for or against abstention.

Although plaintiff's trademark-related claims arise under federal law, the dispute surrounding the license agreement is to be adjudicated pursuant to Illinois law governing contracts.  Defendants' claims in the state court lawsuit are all state law tort claims that are properly before the state court.  There is also concurrent jurisdiction in the state court over plaintiff's federal trademark claim. Should plaintiff decide to seek a more speedy resolution to its federal claims, those claims may properly be pursued as counterclaims in the state court. Plaintiff's rights are therefore not disadvantaged by abstention.

The remaining factors do not weigh either for or against abstention, or else are not significant in this case. The first factor, whether the state has assumed jurisdiction over property,

is inapplicable to the present case. The second factor, the inconvenience of the federal forum, is not significant here either: the federal and state courthouses involved are close to each other. The totality of the circumstances surrounding the instant case counsel in favor of abstention.

Because the court finds that a stay is appropriate under Colorado River, there is no need to reach the question of whether a stay is appropriate under the first-to-file rule.

## CONCLUSION

For the reasons described above, the court grants defendants' motion to stay pending the resolution of the state court case. In light of the stay, the court denies plaintiff's motion for preliminary injunction without prejudice to plaintiff's seeking such relief in the state court. The status date of May 21, 2013, is stricken, and a report for status is set for October 17, 2013, at 9:00 a.m.

**ENTER:      May 15, 2013**

**Robert W. Gettleman**
**United States District Judge**

11